## I. F. BELL v. HARRY C. MATTHEWS.

1. MALICIOUS PROSECUTION; *Action, When Sustained.* To sustain an action for malicious prosecution, it is a sufficient termination of the criminal proceeding out of which it arose, if there was a dismissal by the county attorney without trial. A verdict and a judgment on the merits is not necessary. (*Kelley v. Sage,* 12 Kas. 109, cited, and approved.)

2. PROBABLE CAUSE — *Jury.* In an action for malicious prosecution, the question of probable cause is properly submitted to the jury, when about the facts tending to prove its existence there is a substantial dispute.

*Error from Shawnee Superior Court.*

ACTION to recover damages for malicious prosecution. April 3, 1886, judgment for plaintiff *Matthews.* The defendant *Bell* brings the case here. The material facts are stated in the opinion.

*F. G. Hentig,* for plaintiff in error.

*Rob't A. Friedrich,* for defendant in error.

Opinion by SIMPSON, C.: This is an action brought by Matthews, as plaintiff, against Bell, in the Shawnee superior court, to recover damages for a malicious prosecution. The material facts are, that on the 30th day of April, 1885, Bell caused the arrest of Matthews for a violation of the prohibitory law. Matthews was unable to give bail, and was confined in the county jail for several weeks. On the 28th day of May following, the county attorney, in open court, and in the presence of Bell and the witnesses he had procured to be subpenaed, dismissed the information, and Matthews was discharged from custody. The county attorney being examined as a witness in this case, stated that Bell came to him and stated what he himself had seen, and what he could prove about Matthews keeping whisky for sale at his house, and taking it out in baskets and selling it on the streets; of per-

sons who had bought whisky from him; of persons who had been seen carrying whisky away from the house; of persons who had been seen to go to the house sober and come away drunk. It seems that the witnesses by whom this state of facts was to be proven, according to the statements of Bell to the county attorney, were in the court house at the time of the dismissal of the information. They were subsequently examined as witnesses on the trial of this cause, and failed to substantiate a single statement made by Bell to the prosecuting officer. The case was tried by a jury at the March term of the court, 1886, and resulted in a verdict for Matthews for $350. There was a motion for a new trial overruled, and Bell brings the case here. The errors complained of and insisted upon in the argument and brief of the plaintiff in error, are: (1) that the dismissal of the criminal case by the county attorney, of his own motion, is not such a determination of the case in favor of the accused as will justify an action of this kind; (2) that the evidence as shown by the record is conclusive that the prosecuting witness Bell had probable cause for filing the information; (3) that Bell should have been permitted to testify " that from what you saw yourself, and from the information you had from your wife and Mr. Manning and these other parties, that you believed yourself justified in filing this information;" (4) that Bell was entitled to have the first instruction asked by him, given to the jury without modification; (5) error in the twelfth instruction given by the court to the jury, "that they might take into consideration the proper and reasonable expenses of conducting this suit;" (6) that as Bell acted under the advice of the county attorney in causing the information to be filed against Matthews, there could be no recovery.

These are all the questions discussed, and we shall pay no attention to other questions which might arise on this record.

I. The first error assigned can be disposed of in a very few words. The cases of *Marbourg v. Smith*, 11 Kas. 562; *Kelley v. Sage*, 12 id. 109; *Mitchell v. Sullivan*, 30 id. 231, are against the contention of the plaintiff in error.

II. In this case, there being a dispute about the facts tending to show the existence or want of probable cause, that question was submitted to the jury, and their general verdict for Matthews is a finding of a want of probable cause. As we view the evidence, there was sufficient to sustain such a finding.

III. The question asked Bell on page 66 of the record was in the most objectionable form, and the ruling of the court must be affirmed on that ground alone. He was not asked to state what his honest belief was as to the guilt or innocence of Matthews at the time he caused the information to be filed, and how the honest belief was produced; but the question asked him assumed that the witness saw things, that his wife told him other acts of Matthews, that other persons had given him information, that Mr. Manning had made certain statements to him, and that these things had made him feel that he was justified in filing the information. It is not denied but that the defendant, in actions of this kind, can testify to his honest belief as to the guilt of the plaintiff at the time of the arrest, but the questions propounded must not be leading and full of assumptions as this one was. It was objected to at the time, and the court refused to permit it to be answered. The plaintiff in error did not vary his questions, or try to divest them of their objectionable features, but dismissed his witness from the stand, and assigns this ruling of the court as error. No court would allow this mode of examination by a party of his own witness, if objection were made.

IV. The first instruction asked for by the plaintiff in error was, in substance, that if the jury believe from the evidence that the defendant acted on the advice of the county attorney in filing the affidavit upon which Matthews was arrested, and upon such advice had an honest belief in the validity of the proceedings in said action, and on such advice was under an honest belief that he was using such process as the law provided for the enforcement of the laws of the state, having first given a full statement of the facts of the case to the county attorney, then there was not such malice in the wrongful use of legal process by him as would entitle the plaintiff to re-

cover in this action. The court refused to give this instruction as written, but did in the general instructions give parts of it. The plaintiff in error excepted to its modification. Let us examine it. Its first assumption is, that Bell had acted on the advice of the county attorney in filing the affidavit upon which Matthews was arrested. The evidence shows that Bell went to the county attorney, told him what he saw, and what other persons would swear to, and the county attorney said: "If you can prove such facts, I can convict Matthews." This clause of the instruction would impress the jury with the belief that all Bell had done had been on the advice of the county attorney, when nothing could be further from the fact. He could not prove what he told the county attorney he could, by other persons, and on the strength of which statement the county attorney said he could convict Matthews. This instruction was properly refused for this reason. The second clause in the instruction was not only misleading, but was not applicable to the facts developed in this case. Matthews had made no claim that the affidavit for his arrest or the information filed against him was of no validity. There was no such question in this case, and Bell had no honest belief about it. This clause was intended, with the one preceding, to fasten in the minds of the jury that all these things had been done on the advice of the county attorney. The third clause of the instruction, that on such advice he had an honest belief that he was using the process as the law provided for its enforcement, etc., is a part of the same plan and design. In this case all it was necessary for Bell to have was an honest belief in the guilt of Matthews, and that honest belief produced by the acts of Matthews which he saw, and the existence or performance of those other acts, information of which he obtained from persons he believed to be reliable and credible. If at the time he caused this arrest he had such honest belief, produced in such a manner, it would probably be not only the existence of probable cause, but the want of malice. The instruction was properly refused. The court subsequently gave the law,

44—37 KAS.

upon the subject of the conduct of Bell in consulting with the county attorney, so strongly in favor of the plaintiff in error that if the jury for a moment believed that the statements made by him to the county attorney were true, the verdict must have necessarily been in his favor.

V. In the twelfth instruction, this sentence occurs: "that they might take into consideration the proper and reasonable expenses of conducting this suit;" and this is said in connection with the question of damages. It is very evident from a cursory glance at the record, that the use of the words "this suit" is a clerical mistake, either made by the judge when he drafted the instructions, or by the clerk in transcribing them. This is proved by the connection in which they are used. The instruction is as follows:

"12. If you find for the plaintiff, it will be your duty to award him such damages as will adequately compensate him for such loss and injury, which from the evidence you shall find he suffered. The plaintiff should be made whole for his loss of time, his anxiety and suffering, and any injury to his reputation, caused by his being arrested and imprisoned; and if you allow anything on account of vindictive or punitive damages, you may in your discretion in assessing the amount of such damages take into consideration the proper and reasonable expenses of conducting this suit."

Now the plaintiff below proved an attorney's fee of $50 which he paid or became liable for in the defense of the criminal prosecution, but did not offer to make any such proof in this action. The instruction would not have been applicable to the state of facts presented here. There would have been no necessity for such instruction, if the evidence referred to had not been given. The court below, having in mind this evidence, instructed the jury very properly, that the plaintiff could recover for such fees, and no one better than the learned judge who tried this case knew the law on that question. It is one of those mistakes which sometimes creep into a record, and entirely change the meaning of an instruction, that seemingly no amount of care can guard against. The instruction

as corrected is a proper one, and not subject to the objection made.

VI. The sixth assignment of error has already been considered under that of the fourth, and it only remains to say that this plaintiff in error did not go to the county attorney with a frank statement of the facts. He misconstrued and distorted the acts of Matthews, and he failed to produce the witnesses to prove the other statements he made to the prosecuting officer. When the witnesses he named were produced in court they not only failed to sustain his assertions and promises to the county attorney, but testified to the reverse of what he had said. He sought the county attorney, he gave him his version of the acts of Matthews, and asserted what he could prove by others. Almost every statement he made turns out to be untrue, or so discolored that its resemblance to the truth is very faint. The county attorney told him that if he could prove his statements, Matthews could be convicted. This was not advice to Bell: it was an expression of opinion by the officer of a certain result if the facts were as stated. Bell made the affidavit for arrest because of his own assertion of the existence of certain facts, not because the county attorney advised him that it was his duty to do so. We see nothing in this state of facts that would defeat a recovery. This disposes of all the questions urged by counsel for plaintiff in error for reversal.

On the state of facts presented by this record there arises a well-grounded suspicion that the criminal process of the court was used for the purpose of dispossessing Matthews of a house he had rented from Bell; and if this is so it was such a prostitution of the instrumentalities of justice as not only to justify the very reasonable verdict of the jury, but to compel this court, in considering the various proceedings of the trial of this case, to look with a most lenient eye on all of the rulings of the court below, and sustain its judgment if there was not too great a departure from the principles and rules that conduce so much to the due administration of the law. We

think that in this case substantial justice has been done, and we recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.