No. 37,775

CHARLES B. BARNES, *Appellee,* v. ANNA DANNER, *Appellant.*

(216 P. 2d 804)

Opinion filed April 8, 1950.

*Richard K. Hollingsworth,* of Wichita, argued the cause, and *Clarence R. Sowers,* of Wichita, was with him on the briefs for the appellant.

There was no appearance for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for an alleged malicious prosecution. Judgment was rendered for the plaintiff and the defendant appeals.

In his petition plaintiff alleged that on February 15, 1947, defendant falsely and malicously stated to Glenn Davis, a deputy sheriff of Sedgwick county, that plaintiff had certain property consisting of bed clothing, blankets, sheets and towels, and canned peaches, which plaintiff had stolen from the county hospital of Sedgwick county and that said statements were untrue and known to defendant to be untrue; that the statements were made for the

purpose of causing plaintiff to be discharged from his employment as a stationary engineer at the hospital and for the express purpose of causing plaintiff to become in default in payments ordered by the district court in a certain numbered action thus creating an obligation of the plaintiff to pay defendant the sum of $2,000 forthwith; that in truth the property mentioned was in possession of. the defendant; that defendant stole said properties from the hospital and placed them in the residence formerly occupied by the defendant and falsely and maliciously stated they had been brought to the residence by plaintiff, all for the purpose of causing plaintiff humiliation and ridicule; that by reason of such statements Davis, the county attorney, and Huston, chairman of the board of county commissioners of Sedgwick county, believed the statements to be true, when in fact they were false, and caused a warrant to be issued for plaintiff, as a result of which he was arrested and brought before the city court of Wichita and required to make bond for his appearance. Details of these criminal proceedings need not be noted further than that the prosecution was dismissed. He prayed for actual damages and in a second cause of action for punitive damages.

The defendant's answer was a general denial.

At the trial defendant demurred to the plaintiff's evidence and that demurrer being overruled, defendant offered her evidence. The jury returned a verdict in favor of plaintiff for both compensatory and punitive damages. Defendant's post-trial motions were denied and she appeals from the ruling of the trial court on her demurrer to plaintiff's evidence and from the ruling on her motion for a new trial.

For reasons not disclosed, the plaintiff, as appellee in this court, has seen fit to file no counter abstract or brief in this court and we are not advised as to what he may have urged in the trial court to procure the rulings in that court of which complaint is here made.

Did the trial court err in its ruling on defendant's demurrer to plaintiff's evidence? In reviewing the plaintiff's evidence, we shall refer only to those portions dealing with whether the defendant was responsible for the criminal proceeding instituted against the plaintiff and whether she acted maliciously and without probable cause.

Glenn Davis testified that he was a deputy sheriff; that he knew the plaintiff and had been to plaintiff's premises; that another deputy Dial was out there on December 8, 1946, because of a call

from defendant; that at a later date witness and Dial went there and picked up three crates of canned peaches, seven blankets, five sheets, eight bedspreads and eleven towels, all marked "Property of Sedgwick County, Kansas" as well as three other articles; that the articles were in the kitchen piled in a pile and defendant said it was stolen from the county hospital and that "I don't want it here"; that he did not know whether she told him who she claimed stole the property; that he took the property to the sheriff's office and called the county commissioners; that Barnes told him a Mrs. Boyd, in charge of the hospital, had loaned it to him; that Mrs. Boyd told him a part of what Barnes said was true, that it was two blankets and two sheets, or three blankets and one sheet, but she knew nothing about the rest of the property; that he was not present when plaintiff was interviewed by the county commissioners; that he was not present the first time articles were picked up at plaintiff's house; that he would not have taken the matter before the county commissioners if his own independent investigation had not revealed probable cause; that he did not recommend dismissal of the charge against plaintiff and did not know it had been dismissed.

Plaintiff, testifying in his own behalf, stated that he had been employed as an engineer at the county hospital; that his wife, the defendant, sued him for a divorce and he was restrained from visiting his home; that they were going to have company and did not have enough blankets and stuff and he went to Mrs. Boyd and borrowed them the latter part of August and his wife said she would wash them before he returned them but she did not do so; that when the restraining order was made the property belonging to Sedgwick county was in the house and he went out to get it and defendant refused to give it to him; that since he could not get the property he just let it go; that Dial came out to the hospital and talked to him and that he then came down to see the county commissioners; that he then went and got "this stuff" and turned it over to Mrs. Boyd; that the next time anything came to his attention about the property was when he was arrested by the city marshal who showed him some "stuff" stolen from the hospital, but he had never seen any of it before. On cross-examination he stated all he had taken from the hospital was blankets and sheets for two beds and he hadn't taken them back as his wife had not washed them.

Huston testified he was a county commissioner and knew plaintiff, who was an engineer at the county hospital; that the county

commissioners had been informed that some property of the county hospital was at Barnes' former residence and he had had one conversation with Barnes; that he was the prosecuting witness; that his signature was on the complaint; that he read the charge before he signed it and that he would not have signed it if he did not think Barnes was guilty or that there was probable cause to believe him guilty; that the board believed Barnes had confiscated the property and that was the reason they discharged him and not the fact the case had been brought against him. He further testified that he did not know from his personal knowledge that Barnes had taken anything; that his information was from the deputy sheriff; that he did not merely take his word, he saw the property marked "Sedgwick County"; that he remembered telling Barnes if he had any county property to take it back and that Mrs. Boyd had told him that she let Barnes have some property.

Beard testified he was a county commissioner; that the matter of Barnes having county property came to his attention about December 1, 1946; that the commissioners directed the sheriff to go over and see what he could find; that there was some talk of issuing a warrant but no warrant was issued on the first trip; that the board had information Barnes had property belonging to the county; that he saw the first lot of property brought in and that property was brought in two different times.

There was no evidence to support plaintiff's allegation that defendant stole any articles and placed them in plaintiff's residence.

It is generally held that to maintain an action for malicious prosecution, the plaintiff must show that the defendant was responsible for the institution or continuance of the original proceeding of which complaint is made, and it is not sufficient to show that he has mere passive knowledge or acquiesces in or consents to the acts of another, it must be shown that he was affirmatively active in instigating or participating in the prosecution. In a criminal prosecution he must have been the prosecutor or the actor and moving cause in the prosecution, and he is sufficiently the prosecutor where the action was instituted at his instance and request by a public prosecutor. Where a person states the bare facts as to the conduct of a third person to a public officer and the latter erroneously deems a crime to have been committed and directs an arrest, it is the officer's error rather than the defendant's act which is the cause of the plaintiff's injury (see 34 Am. Jur. 715, et seq.).

As is later shown, want of probable cause is an element for consideration in determining liability for alleged malicious prosecution. Many variations in definition may be found but generally probable cause for instituting a criminal prosecution is a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious, or prudent, man in the belief that the party is guilty of the offense with which he is charged (see 54 C. J. S. 982 and 34 Am. Jur. 731).

Although in some particulars there may be distinctions between malicious prosecution of civil actions and of criminal actions, it is true of both classes that to recover damages for such malicious prosecution the plaintiff must allege and prove not only that the defendant was actuated by malice in instituting the prosecution, but also that it was instituted without probable cause (*Malone v. Murphy,* 2 Kan. 250; *Walker v. Smay,* 108 Kan. 496, 196 Pac. 231; 54 C. J. S. 955; 34 Am. Jur. 727).

In *Walker v. Smay,* supra, it was held that the existence of malice is ordinarily a question of fact for the jury, but where there is no dispute in the testimony, the presence or absence of probable cause is a question of law for the court. In the early case of *A. T. & S. F. Rld. Co. v. Watson,* 37 Kan. 773, 15 Pac. 877, it was held that the question of probable cause is primarily one for the court, but if the facts tending to establish the existence or want of probable cause are in dispute, it is the duty of the court to submit the question to the jury. In *Rowe v. Glen Elder State Bank,* 126 Kan. 291, 267 Pac. 998, it was held that where the question of probable cause is a matter of dispute, whether certain facts exist is a matter of fact for the determination of the jury, but whether particular facts if found to exist, do or do not constitute probable cause, is one of law for the decision of the court and it is error to submit it to the jury. In that opinion reference is made to other of our decisions to the same effect.

We shall confine our review to whether the defendant, by reporting to the sheriff's office that the articles marked "Property of Sedgwick County, Kansas" were at the residence where they were found and taken by the deputy sheriffs, instigated the prosecution against the plaintiff, and participated in the prosecution, and if she did so, was her action in so doing without probable cause.

It may be conceded that whether the defendant, by reporting to the sheriff, instigated the prosecution against the plaintiff and participated in the prosecution, presents a question of fact, if there be

any dispute concerning the same. The demurrer to the plaintiff's evidence of course conceded for that purpose the truthfulness of any evidence adduced by the plaintiff. We are therefore confronted with the question whether there was any such evidence. The sum total of that evidence, as abstracted, is that a deputy sheriff went to the residence of plaintiff and defendant upon a call from defendant and recovered some property and that on a second visit by officers she pointed to property marked "Property of Sedgwick County, Kansas" and said it was stolen from the county hospital and "I don't want it here." There is no evidence that she accused plaintiff or any other person of the theft if there was one. Further than that the evidence discloses that the prosecution did not stem from any direct or indirect accusation made by the defendant, but was the result of an independent investigation made by the deputy sheriff Davis and by the county commissioner Huston.

If we assume, however, for the purpose of argument that there was any evidence that defendant was the instigator of the criminal prosecution of the plaintiff, we are of opinion the evidence as abstracted is such that it may not be said as a matter of law that there was any want of probable cause as that term has previously been defined. The very presence of articles marked "Property of Sedgwick County, Kansas" was itself suspicious. While plaintiff did make some explanation to the deputy sheriff and to county commissioner Huston that he had borrowed some of the articles, there is no showing he told the defendant he had done so. And in any event that explanation, if made, included only two sheets and two blankets and did not cover the remainder of the property, detailed as above set forth, and all of which was marked as being property of the county.

In our opinion the trial court erred in ruling on the defendant's demurrer to the plaintiff's evidence.

In view of our holding, we need not discuss the ruling on the motion for a new trial.

The ruling of the trial court is reversed and the cause remanded with instructions to sustain the defendant's demurrer to the plaintiff's evidence.